RYAN SHAW,

              Plaintiff,

              v.                            Case No. 25-cv-0159-bhl

DR. TOMMY ONJUKKA et al.,

              Defendants.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Ryan Shaw, who was incarcerated when he brought this action but has since been released, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on Eighth Amendment claims based on allegations that he received constitutionally inadequate dental care. On November 26, 2025, Defendants moved for summary judgment. For the reasons explained below, the Court will grant the motion as to Defendant Jessica Gross and deny the motion as to Defendant Dr. Tommy Onjukka.

### BACKGROUND

At the relevant time, Shaw was housed at Green Bay Correctional Institution. Dr. Onjukka was the supervisor for dental staff at Green Bay, and Gross was the Director of the Bureau of Health Services and oversaw healthcare at all adult institutions. Prior to being transferred to Green Bay, Shaw was housed at Fox Lake Correctional Institution, where he persistently complained of pain in multiple teeth. On July 7, 2023, while still at Fox Lake, Shaw was examined by Dr. Christopher Rauch who indicated that, given Shaw's restorative needs, it was unlikely that all fillings could be completed in a single visit. He noted that teeth #28 and #29 should be a top priority because they were, at that time, borderline savable. He also noted Shaw's stated intention "to submit many requests" to get treatment for his teeth. Dr. Rauch advised Shaw that "his and other's efforts are lengthening wait times" for all inmates. Dkt. No. 34 at ¶¶1-3; Dkt. No. 47-2 at 12.

On September 20, 2023, Shaw transferred to Green Bay, where he immediately submitted a dental services request about swelling along his jaw. Dr. Onjukka placed Shaw on the essential list to be seen within eight weeks, but due to staffing shortages, he did not see Shaw until three months later, on December 14, 2023. At the examination, Dr. Onjukka, noted that one of Shaw's teeth was infected. The tooth was extracted. Shaw desired fillings in other teeth that he said were painful, but Dr. Onjukka informed him he would have to wait for his name to get to the top of the fillings list. Dkt. Nos. 34, 48 at ¶¶48-58, 94-104.

Shaw began submitting dental services requests stating he was in extreme pain and wanted fillings. Dr. Onjukka continued to inform Shaw that he was on the fillings list. Dr. Onjukka examined Shaw on February 19, June 3, and September 4, 2024, after he complained of increasing pain and/or swelling. At those appointments, Dr. Onjukka reviewed Shaw's x-rays and took new x-rays. Although Dr. Onjukka acknowledges that pain is subjective, he concluded that the levels of pain and swelling that Shaw reported in his dental services requests were not consistent with his clinical presentation. Specifically, according to Dr. Onjukka Shaw did not appear to be in pain and he did not have noticeable weight change, indicating he was able to eat. Moreover, Shaw explained at his June 3 appointment that there was not swelling, just inflammation when he brushed his teeth. Dr. Onjukka informed Shaw that the cavities he was complaining about were not that large and that he did not see any infection. He also told Shaw that the cavities could be fixed with fillings and that, in the meantime, pain medication was available for purchase in the canteen. Dr. Onjukka offered to extract the problematic teeth, but Shaw refused. Dkt. Nos. 34, 48 at ¶¶59-84; 105-23.

While Shaw waited for his fillings, he was seen multiple times by nurses for complaints of dental pain and swelling. Nurses never reported any evidence of swelling. On several occasions, Shaw was given ibuprofen and dental wax, which, at the time, he reported helped. Shaw highlights, however, that the issue was not corrected and that he continued to experience severe pain that prevented him from sleeping and sometimes eating. According to Dr. Onjukka, if Shaw was unable to afford over-the-counter pain medication, he could get it from the nurses. He did not prescribe antibiotics because Shaw never presented with an infection. Dr. Onjukka did not examine Shaw again after September 4, 2024. Dkt. Nos. 34, 48 at ¶¶124-49; Dkt. No. 49 at ¶136.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

**ANALYSIS**

Shaw asserts that Dr. Onjukka violated his Eighth Amendment rights when he disregarded his complaints of pain and swelling, refused to provide Shaw with fillings, and offered only extraction as an immediately available treatment option. Shaw also asserts that Gross violated his Eighth Amendment rights when, after she was notified that his inmate complaints had been affirmed, she failed to intervene. A reasonable jury could find in Shaw's favor on his claims against Dr. Onjukka but not on his claims against Gross. Accordingly, Defendants' motion for summary judgment will be granted as to Gross but denied as to Dr. Onjukka.

To prevail on a medical care claim under the Eighth Amendment, a plaintiff must prove that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). The Seventh Circuit has clarified that, "[w]ithin the universe of deliberate indifference cases is a narrower category when a prisoner alleges not that his condition was ignored entirely, but that he received constitutionally deficient treatment for that condition." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). These types of cases are "better framed not as deliberate indifference to a serious medical need, but as a challenge to a deliberate decision

3

by a doctor to treat a medical need in a particular manner." *Id.* (internal punctuation and citations omitted). It has long been held that, in such cases, courts must "defer to a medical professional's treatment decision 'unless no minimally competent professional would have so responded under those circumstances." *Id.*

Defendants first assert that the condition of Shaw's teeth was not objectively serious. The Seventh Circuit has "found the following circumstances to be indications that a prisoner has a serious medical need: The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (citations and internal question marks omitted). Given Shaw's persistent complaints of severe pain and given multiple dentists' conclusion that the teeth needed fillings, a jury could reasonably conclude that Shaw suffered from an objectively serious dental condition.

Turning to Defendants' response to Shaw's condition, Dr. Onjukka acknowledges that fillings would have addressed Shaw's complaints of pain, but he asserts that his hands were tied regarding when Shaw would receive the fillings. Dr. Onjukka asserts that he periodically examined Shaw in response to his complaints of pain and swelling to ensure Shaw was still infection-free and that his condition had not progressed. He explains that, because he was satisfied that Shaw's condition did not require immediate treatment, Shaw had to wait on the filling list for his turn. According to Dr. Onjukka, x-rays and evaluations did not indicate that Shaw should be prioritized over other inmates who had been patiently waiting for their turn. In essence, Dr. Onjukka believed that Shaw was exaggerating his symptoms to jump to the front of the line. A tactic that, while at Fox Lake, Shaw had suggested to Dr. Rauch he might employ. In part to call Shaw's bluff, Dr. Onjukka offered to extract the painful teeth, but Shaw refused and instead demanded Dr. Onjukka move him to the front of the line and give him fillings.

Shaw offers a different characterization of the same events. He denies Dr. Onjukka's accusations and insists that he was not exaggerating his symptoms. He states that his problematic teeth were extremely painful, causing swelling, interrupting his sleep, and impacting his ability to eat. He points to the more than seventy-five dental services requests he submitted during the year he waited, begging for help. Shaw notes that, in response, sometimes nurses—but never Dr.

Onjukka—provided him minimal assistance (pain medication and dental wax) and only on a handful of occasions as he waited for actual treatment.

A jury who believes Shaw's description of his pain could reasonably conclude that Dr. Onjukka's refusal to prioritize his treatment and/or provide him with pain relief while he waited demonstrated deliberate indifference to his dental condition. The Court acknowledges that Dr. Onjukka had no control over the length of the fillings list, but neither did Shaw, and Dr. Onjukka offers no explanation why the dental services unit's insufficient resources meant that Shaw had to suffer in pain for more than a year. Moreover, Dr. Onjukka offers no evidence supporting his assertion that the delay in treatment was due to the length of the list. For example, he does not explain how many people were on the list when Shaw arrived at Green Bay, how Shaw progressed up the list during the year he waited, or how long other inmates waited on the list. Dr. Onjukka's mere say-so that the list (and not his deliberate indifference) was the cause of the delay is insufficient.

Also, Dr. Onjukka implies that he refused to prioritize Shaw's fillings and/or provide him with pain medication while he waited because he did not believe Shaw was being honest about the level of pain he was experiencing. He explains that his objective findings were not consistent with Shaw's subjective reports of pain. But whether Dr. Onjukka's refusal to prioritize Shaw's treatment or provide him with pain medication was based on a good-faith belief that Shaw was malingering is an issue for the jury. *See Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002). Accordingly, Dr. Onjukka is not entitled to summary judgment.

Nor is he entitled to qualified immunity. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a court reviews a defendant's motion for summary judgment based on qualified immunity, the court considers "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at [that] time." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (citing *Pearson*, 555 U.S. at 232); *Estate of Clark v. Walker*, 865 F.3d 544, 549–50 (7th Cir. 2017).

Here, as noted above, "[t]he general standard for liability under the Eighth Amendment for refusal to treat a serious medical condition was well-established at the time of these events." *Walker*, 293 F.3d at 1040 (citations omitted). "And for the reasons already explained, the evidence viewed in the light most favorable to Shaw could allow for a jury to find in his favor. Under these circumstances, Dr. Onjukka is not entitled to qualified immunity. *See Chilcutt v. Santiago*, No. 22-2916, 2023 WL 4678583, at *3 (7th Cir. July 21, 2023) ("[A] district court properly denies a motion for summary judgment based on qualified immunity when the facts, viewed in the light most favorable to the plaintiff, create a genuine dispute about whether the defendants' actions violated a clearly established constitutional right.") (citing *Estate of Clark v. Walker*, 865 F.3d 544, 551 (7th Cir. 2017)).

Unlike Dr. Onjukka, Gross, who serves as the Director of the Bureau of Health Services for all Wisconsin Department of Corrections adult institutions, is entitled to summary judgment. No jury could reasonably conclude she was personally involved in Shaw's treatment. In her position, Gross liaisons with departmental leadership, who directly supervise staff at the institution level. Dkt. No. 34 at ¶12. Her involvement was limited to receiving notification that two of Shaw's inmate complaints had been affirmed. *Id.* at ¶¶13-14. But she is notified of *every* inmate complaint that is affirmed, and the notification is for informational purposes only. *Id.* at ¶15. Gross does not take action on affirmed inmate complaints; instead, she defers to the relevant department to implement a solution. *Id.* at ¶17. Her deference to dental care staff at a particular institution to provide good dental care does not run afoul of the Constitution. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (holding that "[b]ureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job" and that high-ranking officials are "entitled to relegate to the prison's medical staff the provision of good medical care"); *Vance v. Peters*, 97 F.3d 897, 991 (7th Cir. 1996) (holding that, under §1983, a defendant must be personally involved to be liable). Gross is therefore entitled to summary judgment.

## NEXT STEPS

Shaw's claim against Dr. Onjukka will proceed to trial. Given the difficulty of trying a case before a jury, including offering a coherent opening statement and closing argument, presenting and examining witnesses, and locating and introducing evidence, the Court will attempt to recruit a volunteer lawyer to represent Shaw at trial. The demand for volunteer lawyers is high, but the supply is low. Few lawyers have the time, ability, or experience to volunteer for cases such

6

as these.  The Court encourages Shaw to be patient as it makes efforts to recruit a lawyer to represent him at trial.  The Court will promptly notify Shaw in the event a lawyer volunteers to represent him.  In the meantime, the Court encourages the parties to explore whether settlement is possible.  Shaw is reminded that he must keep the Court informed of his whereabouts and promptly update the Court if his mailing address changes.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' summary judgment motion (Dkt. No. 32) is **GRANTED** as to Jessica Gross and **DENIED** as to Dr. Tommy Onjukka.  Shaw's claim against Jessica Gross is **DISMISSED**, so the clerk's office is directed to terminate her from this action.

Dated at Milwaukee, Wisconsin on May 13, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

7